say you may be seated at this point um before we start the timer on our first case there was an issue raised about trade secret information being disclosed at oral argument so um i'm not aware of anything that's not in the briefing and the briefs are public i assume is there any reason that we would be disclosing anything that's not already in publicly available briefs your honor charles burke for bimbo bakeries um i believe that the briefs were redacted to delete some confidential information it is in part a trade secret case and so the trade secret details were redacted counsel for the defendant mr wilker and i were talking about this before we came into the courtroom and he agreed that his argument is not going to go into any of the particulars of the but he did raise the issue that he was concerned about the possibility that the court might ask him a or me a question that would require us to go into the details of the trade secret that may very well may not happen but just in case we had raised that issue at the outset yeah well alert us if that's if that's going to be a problem so we will do thank you and your honor this is steven just much of the record here was in fact filed under seal so that's the the issue all the court has everything but much of it was filed under seal okay okay thank you so i don't stumble can i ask is it all right to reference temperature and baking time not using the numbers or your your honor it is okay yes i mean i guess in an ideal world i'd rather not but we need to be able to go into some level of detail so i think if you mean time temperature or baking is okay as long as we don't get into the particulars of what the temperature is what the timing is etc i think it's okay and the same with one to three percent potato flour yeah as long as we we mentioned your honor you can mention potato flour can mention the dry yeast but not the percentages or the amounts thank you okay uh mr wilker i think you're on first thank you your honor may it please the court steven wilker for united states bakery um excuse me i'd like to reserve obviously i know it's my responsibility but i'd like to reserve up to five minutes for rebuttal uh your honors we're here today because there are multiple issues in this case as we just discussed there's a trade secret issue there's a separate false advertising issue i would like to start with the trade secret issue um the the the alleged trade secret here uh was defined in such a fashion to essentially encompass um the entire category of home style bread um and the home style bread category is a can you see me i can okay you're the only person i can see now and i'm not sure what happened but the the screen had a lot had too many boxes on it for people who weren't in this case judge hearts i think you might be in speaker view and how do i change that so if you're on a laptop if you hover in the top right yes the upper right corner if you hover just kind of move your mouse over there towards the upper right okay yeah nothing's popping up correct that's correct let's see what happens oh okay there was something else that happened okay do you have everybody on the screen as well as the timer i i do i'm very sorry mr walker um do you want me to start the timer again and would you please i think that's fair absolutely i'll try not to touch anything on the on the laptop now and maybe that'll keep us from running into problems okay thank you sorry thank you your honor um again there are there are two issues here there's a trade secret and a false advertising issue primarily there's also a trade issue um with respect to the trade secrets um i think it's important to look at what was claimed first by the plaintiff the plaintiff's baker what did the baker say they do and i've just we've described this in our briefs and then we compare that to what the experts said is the supposed secret here and there's a complete mismatch the the the what the baker said is the is the process is not the the secret as described by the proposed by the by the expert the expert described the secret in such a manner that it not merely encompassed what they do but it encompassed what everyone does and it encompassed what my client already did in its standard processes um we talked a little briefly before before the argument formally began about time and temperature if you look at time and temperature and you compare in the briefs what the evidence showed at trial the evidence wasn't disputed their time and temperature is different than our time and temperature um the the range of ingredients that you described earlier is the entire effective range of the ingredients so in those circumstance the idea that this compilation could have value first from being adequately described there's no specific particularity requirement but there has to be a description of the secret in such a manner that you obtain value from it and when in this case the expert describes it in a manner that occupies the entire field uh and does so in a way that departs from what the plaintiff is actually doing that can't be a trade secret are you saying are you saying that there may indeed be a trade secret somewhere in this case but it's not before us because it's defined too broadly it could be it could be there might be a secret in what they in fact do and mr fall mr fall had that trade secret but it's not alleged that you are making the same bread as grandma sycamore that is certainly if you look at the evidence as to the process that u.s bakery used to make the product at the time it was not doing the things that beanbo bakeries was doing at the time their expert managed to describe the secret in such a broad manner as to occupy the field but if you compare what he described to grandma sycamores from the time from the time that bimbo and its predecessors acquired it if you compare what he said to what in fact the um the expert said there is a complete mismatch well let me see if i understand that what you're saying so for example if the trade secret is described as having 10 to 15 potato flour and you're saying bimbo was using 10 potato flour and u.s bakery was using 15 then you haven't appropriated their secret they just expanded the definition of what broadly enough that it encompassed the two extremes yours versus uh bimbos is that what you're saying that is that is in essence what we're saying that we're not doing what they do and their expert described it in a matter to capture the entire effective range of that ingredient that ingredient can't be more than that particular number because federal regulations say you couldn't call it a white bread if you if you had more than that amount and so when they try and occupy the field um they they describe it in a way that the evidence doesn't support there's simply no evidence that we used the same amount of that ingredient there's no evidence that we cook it for the same time or at the same temperature and the other process steps without getting into too much detail i'm trying to be be cognizant of that well you can do what i did and just make up numbers to give us an idea of this of the nature of your issue well the nature of the issue is that on the third item which is how you prep the the the the dough before baking it their expert testified to a period uh that was 50 percent longer or more than what we did and it's and it's it's not even in the same ballpark and that's outlined directly in the briefs um so if we're doing it for that much shorter that if they're doing it for that much longer than what we're doing it how is that it may be that what their length of time is a secret but it's not what we're doing and it's not what and it's not what we do anything different we every product the notion that this was somehow different is also belied by the undisputed evidence that every product that goes through that process is done at the same time and the same temperature by my client there's no difference so how is that a secret one first off and how is it encompassed by what they're what they're doing it's nothing that you can't misappropriate unless you do have identical baking times and temperatures and ingredients what i'm saying is if what they're claiming is that publicly disclosed ingredients and all of these elements yeah if they're not whether they're do they have to be identical i don't know that they have to be identical but they have to be not insignificantly different right i mean these are significant differences into both times and temperatures what if u.s bakery had not had ever run into mr fall and learned the how to cook this bread would it be able to make the bread that is making now without having gotten the trade secret from mr fall and does that matter is that the question uh i think the answer is we we whether or not they learned anything from mr fall the question is what's the secret if they're not using what what beambo itself describes as their process then how is it they've misappropriated a secret and so the the question is isn't what or mr fall did or did not say the question is are they doing what beambo does and are they even close and the answer is no and the rest of it is just jury speculation based on frankly some emails the jury didn't like but if it's like if you if you plan to take something and it turns out what you took wasn't valuable wasn't useful there there's no there's still no secret there you may have some other wrong of some nature but it's not a trade secret violation if if you've allegedly taken something that isn't that it that has doesn't have the value that's ascribed to it is there anything does does the record show what uh mr sycamore told mr fall or mr fall told u.s bakery the specifics of what was said the the only thing that the record shows is i i think it's fair to say that mr fall said that mr sycamore taught him how to make bread and the record shows that mr fall shared a recipe that is an exhibit that was talked about much at trial and that recipe had some of this information but not all of this information and it wasn't the information that's b and it wasn't congruent with in fact what beambo does well for example when we're talking about percentage of potato flour did did this uh secret well whatever told mr fall oh was it a a range was it like 10 to 15 percent no or was it 10 it was a number but it's also not but it's also not the number that bimbo uses your honors i'd also put and it was and it was significantly different from the number bimbo uses it in your view of significance it was within the range they claim but it was it was a different number and it's also just to be clear i'm saying uh mr fall gave a specific number say 10 percent was the number that u.s bakery used 50 percent more than that or five percent more than that i i think the fairest way to say it is that the number that mr fall provided was about 15 or 20 percent 15 or 20 percent higher than i think the number bimbo uses okay okay the other piece here your honors and and i i'm running in time without dealing with the advertising claim and i want to address that is that the the um excuse me the um i apologize i've just lost that train of thought and i apologize um if i may briefly on the advertising claim yes um the claim here about local local is not an objectively measurable fact therefore it cannot be actionable under the lanham act local you think you think someone could possibly have thought that local meant baked in oregon when it's sold in salt lake as local i i don't i'm not saying that but it didn't say baked in oregon it said local and and i want to be clear local as a referent is not capable of literal falsity it can't be objectively proven as their own as their own survey evidence demonstrated local means different things to different people and if you look at the survey results it very much meant different things to different people how broadly was it in the survey results how far away some people said in the united states was local some people said her bread with respect to bread they they the way they phrased the question if you look the answers is it it's made in the united states what was the question do you recall the specific question the specific question is what does local mean to you and then the leading question which was improper was what does local mean it does local in this context tell you anything about where the bread was baked but that was leading because it didn't say locally baked it was a company tagline that said fresh local quality it didn't say locally baked it didn't say there was enough confusion that even if it's not literally false that it was misleading do you disagree with that well i do disagree with that because i don't think there's actually any competent evidence of that i think if you believe that it can't be literally false you then have to do competent evidence that it could be and there was no competent evidence of that for all the reasons we described in our brief the um the the survey itself didn't properly characterize that in part because of the leading questions in part because the failure to analyze in part because the the public appeared the the survey group appeared to be indifferent to it wasn't material to anyone's decision they were was right in the center of material indifference at this point your honors i'd like to reserve my remaining time for rebuttal i i need to challenge you on that it was right in different if if you had uh a range starting at zero of um i dislike local bread and tan was i really like it to be local then the middle would be indifferent and that was the scale but that was not the scale the scale wasn't actually dislike being local zero was you don't care and every number higher meant you cared more how can you say the middle range five to six means you're indifferent to whether it's local it wasn't indifferent it was it was totally unimportant to totally important and that's different and totally unimportant to totally important the middle is indifference i don't see that well go ahead we'll save you a minute thank you um mr egan you have uh let's see where is mr egan i'm right here you are top left i would like to reserve at the outset i'd like to reserve two minutes if possible and i want to introduce myself to the panel i'm sean egan i represent leland sycamore in this case and obviously i'll do my best to answer any questions the panel may have but i'd like to focus on three things if i may the first is the evidence as to the allocation of fault under the utah liability reform act and in this regard it's very important to remember that the claim against leland sycamore in this case in the first amended complaint of the plaintiffs was that mr sycamore misappropriated a trade secret in conjunction with wild grains and usb in 2013 and that's the important point as a tort this claim is subject to the liability reform act and we have a right under the statute 78 b-5-819 to have liability apportioned the question i'm presenting to the panel is what is the evidence that supports an allocation of fault to bim to leland sycamore of 25 i attempt to marshal that evidence on page nine of our opening memorandum and what i come up with is certain usb personnel saw mr sycamore at the wild grains facility where his son worked and certain um beamboat person uh personnel saw mr sycamore there as well and that's it nobody told there's no evidence of mr sycamore disclosing a trade secret to anybody at wild grains or at usb at that time that makes the colloquy that i have with mr hoffman as we detail on pages six and seven of the opening brief about damages to be very important because i'm asking him monetarily how much damage did leland sycamore cause and i don't think i'm misreading his testimony to say you could run this exact same number of damages without reference to mr sycamore i think in a commercial case that's pretty strong evidence of causation the inference that if there's no actual harm as well and that's why the plaintiff's reference and the district court's reference to the allocation issue being a jury function is unhelpful the cases that we cite on harris versus shopko which we cite on pages page 16 the egbert versus nissan case we cite on 19 those cases are requiring evidence on the issue of causation the cause of the harm yes but it seems to me that's not what juries do when they apportion liability it doesn't have to be based on causation often it's uh the both defendant's actions are but for causes you may even throw in the plaintiff's actions it's a moral judgment who is more culpable not in terms of causation but in terms of how bad their act was and that is a jury question and the fact that the same damages would have would have been um assessed regardless is uh is is not the point well if i may challenge are you saying that the only way to apportion is percentage of causation well i think that i if i may challenge you your honor i don't think it's a moral judgment i think it's an evidentiary judgment the what is the evidence that supports the allocation that you're making you may be offended by what leland sycamore was alleged to have done well they had to find let me start with this the jury you're not challenging the jury's finding that mr sycamore uh engaged in tortious misconduct are you well i think that i i think that i am because i think the allocation is unsupported by the evidence this this but but if you're focusing on the allocation you're starting with the assumption that he was somewhat at fault of course he's if he's nowhere at fault then you're right zero i'm starting with the assumption that the jury has found him at fault and now i'm challenging the evidentiary basis of that and i think this bleeds into the other elements of where i wanted to go this morning which is if they're going to focus on the testimony of jeremy fall that mr sycamore disclosed the trade secret to him and the concession by the plaintiff that that disclosure occurred in 2008 i think that underscores or strengthens my argument that i should have been entitled to amend my answer to assert a statute of limitations claim or defense because now we're not in 2013 we're back to 2008 and as a result i have a right therefore to assert this claim this defense of statute of limitations i said you would have had a right but you were untimely you can't wait as long as you did and i think the reason i'm not untimely judge is that the concession of the 23rd of that it was really 2008 came at trial and so i was amending to conform to the evidence that bimbo introduced at trial that it was in fact in 2008 that the disclosure occurred and not in 2013 as alleged so it's not untimely respectfully because under the under the 10th circuit rule or the the uh the case of department of interior versus our new mexico versus the department of interior that we cite on page 22 the rule is under 15b that leave to amend to be freely granted unless there's prejudice and neither neither the plaintiff nor the district court outlined the prejudice allowing the amendment leland knew back in 2008 there wasn't a time that during this litigation that leland didn't know about the release in 2008 why couldn't he have made the claim regardless or the defense regardless of whether however the plaintiff pleaded this i think that there's no there's no good response to the fact that except to the extent that leland thought that he hadn't done anything wrong but to the extent that your question is correct judge i would i think not only did leland know in 2008 the plaintiff knew in 2009 that leland had done this and yet chose to bring an action that did not include the trade secret claim and that gets to my final point which is on race judicata and the race judicata point which i did raise in the defense in my as an affirmative defense was simply that this claim had already been there had come up there was a chance to litigate it and it was not litigated and as a result um it was barred i think if there's if the single claim theory that the district court employed in uh in its ruling of march 2nd 2018 i think this is sycamore supplemental appendix 77 if that rule holds then that rule holds to both that is if i'm charged as the defense to raise a statute of limitations defense even though there's a claim that there's a new misappropriation based on paragraphs 23 and 24 of the first amended complaint if i'm charged with raising that affirmative defense then i think that same single claim theory has to apply to the plaintiff okay that was to raise that may have been a good defense you did put it in your answer to the complaint but you didn't have it in the pre-trial order which governs is that correct it was not in the pre-trial order i agree with that your honor but it wasn't for you that's that's pretty significant if you don't keep it in the pre-trial order well my view of that is that this is a legal defense it's not a jury issue it doesn't necessarily require uh litigation per se and also i think the court has the authority independent of all of that to um rule on it based on the facts i've got 45 seconds i'd like to reserve some in rebuttal if i may judge okay thank you your honor mr burke thank you your honor uh can i ask first in the court hear me hear me okay yes thank you your honor uh charles burke for bimbo bakeries um i will cover the issues in the same issue same order that mr wilk recovered them i will talk about the trade secret claim first i'll talk about false advertising second if time allows i will address briefly the trade dress claim which the district court improperly dismissed on summary judgment and then also i hope to be able to address a couple of mr sycamore's issues on the trade secret misappropriation claim it's important to keep in mind the deferential standard of review that applies to that the challenge is simply to whether there was enough evidence to support the jury verdict so as long as the verdict was reasonably supported by the evidence it must be upheld what mr wilker has done and what he has done in the appellant's brief on the trade secret issue is simply basically to cut and paste his expert's opinion all of the arguments that he's articulated today all of the arguments that are articulated in u.s bakeries brief are a repeat of exactly what his expert said and so all of those opinions and all of those facts are put in the argument and then all of the contrary evidence is ignored and does it matter does it matter that the ingredients are different the cooking time is different the mixing is different and apparently the bread is different well what do you mean by is different your honor just so i'm sure i'm answering the question and i don't want to stumble and start talking about your trade secret but do you contend that the recipe is the same that the baking and the temperature times are the same that the mixing is the same what your honor grandma sycamore's homemade bread is made in accordance with the trade secret that our expert dr hosny identified but that doesn't answer my question well if if the questioner on this is why i asked for the clarification so let me answer it this way because i believe this may be the question u.s bakery makes the argument in its brief that the way you make grandma emily's is very different than the way you make grandma sycamores for example they make a big deal out of the fact that you mix the products differently there's different steps in the process that doesn't matter and that is totally irrelevant the question here is not are you making your product exactly like grandma sycamores the question is is the product made in accordance with those elements of the grandma sycamore process that are trade secrets what dr how is there any old are there any old-fashioned breads that don't meet those very general trade secret guidelines absolutely your honor in fact none of them meet those guidelines and and there was a what the evidence that trial showed is that many companies because of the tremendous sales success of grandma sycamores and it is just phenomenal in its market dominance everybody is trying to knock that off it happens every few months somebody comes up with a new homemade bread product trying to knock it off and guess what no one ever before u.s bakery got leland sycamore to help them nobody could ever even come remotely close to reproducing grandma sycamores in fact your honor it's not just all those other competitors who couldn't recreate grandma sycamores because they didn't know the trade secret u.s bakery in 2011 tried to recreate grandma sycamores and in fact on the documents that showed the effort that they made they called the product they were making grandma sycamores and the testimony was that that piece that loaf of bread was garbage it was a junk ugly loaf nobody would buy it in 2000 grandma emily's recreated i'm sorry it did when they hired leland sycamore in his son's bakery in the middle of summer of 2013 they tried again in 2013 to recreate grandma sycamores they could not do it so they went to leland sycamore and leland sycamore's son and they made it for them and then my client sued them when that happened they fired leland sycamore and they started making it themselves and guess what it was garbage nobody would buy it it was nothing like grandma sycamores until about six or eight weeks after the email from jeremy fall in november of 2013 and jeremy fall gave them what they needed to know told them the and only then was u.s bakery actually to actually reproduce grandma sycamores because then and only then did they have the trade secret for how to to make grandma sycamores now council for u.s bakery has made the argument here that um this trade secret occupies the field well that was his argument my expert explained it to the contrary of that but how could it possibly occupy the field when nobody else has made a loaf of bread like this except my client and except the united states bakery this trade secret is incredibly narrow it's contrary to the logic of how you make commercial breads no one has ever figured it out even though they've had all the reasons to and the reason is because it's such a narrow such a unique process the other point is a legal question counsel yes is it are you liable for appropriating a trade secret if you get that secret and then perhaps manipulate things a little bit maybe do things which you think make it even better but you don't reproduce the item that you have the secret for are there any cases along those lines because that seems to be what your argument is that yes they did not you seem to concede that their recipe u.s bakery's recipe is not the same as bingos but they couldn't have come up with that without learning grandma sycamores recipe your honor it's a little bit different than and back up just a minute it doesn't matter under trade secret law it is completely irrelevant whether the recipe for grandma sycamores the ingredients of grandma sycamores are the same as grandma emily's it doesn't matter whether they mix them the same whether they have the same ingredients what you do under trade secret law is you look at what's the trade secret component of the process and that is the only thing you look at as an example of that at trial and this is quoted in our appeal briefs i asked the other side's expert i said does mixing have anything to do with the trade secret because the whole focus of usb at trial was the mixing is different he said no the mixing has nothing to do with the trade secret it's irrelevant that you have other elements in production what happened is when we hired carl hosny one of the top experts in the grain science we said carl why is this bread so incredibly unique special and successful and he studied it he analyzed it and he came up with these four things he said these two ingredients and these two processes within this range that is what makes this bread special it doesn't matter what the other ingredients are it doesn't matter how you mix it it doesn't matter what those other things are you just look at the it doesn't matter and it doesn't matter whether you use the precise recipe that grandma sycamore used you'll get this result if you're within 10 percent or something like that is that what he said no because everything beyond those four elements is irrelevant it doesn't matter how close all those other i thought the elements he discussed were for example and i won't use the actual figures potato flour is 10 to 15 percent sure so your honor he said it grandma sycamores was 10 percent grandma emily's was 15 but your expert said the important thing is that it's within this range of 10 to 15 percent is am i understanding it correctly yes your honor he had ranges not only on ingredients like that he also had ranges on other processes the baking process okay the proofing he had he had ranges of that because what he said is it's not one exact there's two elements it's time and temperature and depending on how you modify one it impacts the other so i can't say my trade secret is x minutes at x temperature modify the temperature slightly and the time will change slightly so what he did is gave the ranges of times temperatures percentages of ingredients and he said if you are within this range and grandma sycamores is made dead center in the middle of all these ranges he said if you're doing within that range that's what the trade secret is that's what do you have any do you have any case law or even a treatise that that describes the trade secret as something different from precisely what the infringed party did um you're saying and if i'm not it makes some sense but i'm not sure it's the law so uh your honor no i don't have one but the reason is because from my perspective at least and i just do intellectual property litigation so i do this a lot it's it's foundational to the concept of a but five of those steps everybody does that and you have to do that and that's well known but you just got two or three steps that are unique the trade secret is those two or three unique steps you don't look at all those other steps everybody's doing those and those don't impact the the what you're trying to accomplish it's those two or three parts in the middle that are unique so i don't have any law to support that but to me that's foundational to what it let me clarify my it's that those two or three steps have some uh freedom in the joints uh you don't have to be precise about those three to to get the a similar enough product well and you're on but you need to know you need to keep it within a a range of that so so i'll state it again um because i don't think you responded precisely to my precise question can you violate a trade secret even though you don't do it the way the owner of the trade secret does it but you just do it enough it would be a damage question i suppose if the owner of the trade secret is actually not practicing the trade secret i don't think you could get any damages so i'm not sure it would matter if there's a trade secret but here your honor i mean my client makes grandma sycamore's exactly within the trade secret as described by dr hosny all the ingredient ranges the time ranges the temperature ranges grandma sycamores is all made well within those ranges and ranges is the only way that dr hosny could describe it because like i said it's not an exact number it has to vary it varies depending on the elevation that you're at on all sorts of other factors um could i ask the court a favor i have a technology issue and i can't see the clock could the court tell me how much time i have please well 55 well hold on let's stop the clock and see if something can be done your honor we had we had we had this problem at the beginning and basically i i had it before and i thought i solved it and i didn't i'm not sure i'll try where melissa anderson should be but let me let me try one thing that i that that helped last time let me see that doesn't it still doesn't do anything your honor i have my my uh phone and and you said it was 12 minutes and what i'll just set my phone seconds okay i'll set my phone for 12 minutes and 50 seconds and do it that way i don't want to delay things further because of my technical issues thank you your honor i'm very very sympathetic to people with that technical issue thank you i appreciate that um i'd like to talk for a few minutes now about the false advertising claim if i could this is by all accounts an egregious horrendous campaign of false advertising united states bakery sold 153 million dollars in bread advertised it all promoted it widely as fresh local quality bread and in fact there was nothing fresh about it that bread was shipped in some cases over 2 000 miles to market the average was it was shipped 674 miles to market and all of it all of it that 153 million was produced out of state and counsel counsel hello um so let me just stop you there though can i get you to directly address the argument that local cannot be defined sure um um let me let me just switch to my notes real quick your honor and and go to the i know that wasn't where you were going but i want to make sure that you address that argument before time is up that that is the central issue your honor and i appreciate the direction and i'll get right to it your honor i am going to answer that question but i want one observation beforehand and that is this counsel for u.s bakery is not capable of giving this court any truthful meaning of the term local their marketing company advised them to use this term local they used it extensively but yet they don't know what it means why they put it on the product that they don't want it means and they can't give this court any truthful meaning to the term now your honor to your question what does it mean i found in discovery because that was obviously an issue that confronted me early on in this case what does local mean obviously the definition of the term would suggest that it means something close by to you um as as as i went through discovery and looked up looked it up though i found three different sort of concepts many sources many people many places and our survey backed us up said it means in the same city that i live in other people said it means well a broader category like the same county or the same geographic region of a state and other people said well it means within my state very very few and then counsel referred to to maybe one answer in the survey which might be contrary to this but very few people have a concept of local that's outside of their state uh so we chose the definition your honor that we advocated to the jury of course it's up to the jury to decide on the definition but we're giving you one reasonable definition they could have followed that we followed which is that local means that it's nearby at least within the same state rona let me tell you the evidence that we had to support that definition number one we had dictionary definitions number two we had agricultural laws that we quoted where people can sell local produce as long as it's from the same state we had regulations from walmart the biggest retailer in the country and walmart said that you can sell things and promote them at local and walmart stores as long as it's produced within the same state we had the survey even your honor the authorities that u.s bakery sites support my definition and they're in their opposition they cited the definition that said 400 miles is what local means but what that definition actually says is 400 miles or within the same state and your honor what cinches it for me bottom line forget the other evidence what i'm going to tell you right now is enough witnesses from united states bakery implicitly agreed that that is the correct meaning the cfo testified that the company dropped the use well i'm sorry before they dropped the use u.s bakery was in the middle of this lawsuit they were trying to have to figure out how to deal with this and they came up with a program where they decided for a period of time that they would only advertise product as local if they had a bakery in the same state in other words united states bakery at least for a period of time was following this definition that i'm suggesting which is that local means you have to have a bakery in that state that is producing the product your honor the best analogy i can give you and i people have different understandings it's not different meanings it's different levels of application to me the best analogy to that was the case that we cited on diet pepsi what does diet mean and when you can properly advertise a drink is diet and the court said well as long as it has less calories than the regular product it's diet diet means less calories so that you theoretically weight so one calorie is diet five calories is diet 10 20 all the way up i think a coke has 120 calories and it can't anything less than 120 calories you can sell that as a diet coke or a diet pepsi it's a similar concept with local we understand what local means just like we understand what diet means even if we have a slightly different range of application and your honors please note that the definition that i adopted here was the most encompassing definition i could it includes people who think within the same city if they think that it has to be within the same city to be local then it's going to be from out of state it includes all of those people within my definition and the definition that i advocated the jury is the most generous to us bakery that i could but we chose the most conservative uh definition that we could and yes sir maybe judge eyed has follow-up did you want to ask something well i was just does your definition include everything except for national no your honor my the definition that i had advocated to the jury is that when bread is produced locally it means that it was produced nearby at least within the same state so not in that state it was produced in any other state then that would not be local okay so that's not the most broad definition you could ever use i'm talking your honor using the evidence that i had from discovery as to what people think local means that was the broadest that i could use you're not i mean the the amount of evidence is like that that you're going to find where people think national products can be local state level there's this clear divide and from all that evidence that i listed for you that evidence shows that people are need some criteria for what local is and over and over stores and and government agencies are adopting the state line as long as it's within the state it's local walmart does it lots of laws okay thank you even that is pretty vague isn't it in that just one example salt lake city bakery since we're talking about salt lake city some 80 miles to evanston wyoming and 250 miles to st george utah they can have the bread on shelves in evanston pronto same television market same newspaper market that sounds pretty local to me well your honor u.s bakery made a similar argument to that and i think they they an example of two cities or even closer i think they chose vancouver washington and portland oregon which are even closer together a couple responses about your honor number one it doesn't matter because those aren't the sort of circumstances we're dealing with here and you can tell the 674 mile average that we didn't have a bunch of things here where it was close by as your honor has described it this was stuff that was really being shipped substantial differences so but i'm just honoring your test the test that you just stated and you're stating uh it has to be in the same state test and that otherwise if you use the word local it is literally false that's your position that is my position your honor it was the the term was used by u.s bakery it had to mean something why would they use it if it didn't mean anything and if it doesn't mean your honor what i have proposed what does it mean the mere fact that u.s bakery is incapable of offering the court a truthful definition that in and of itself shows that it's false i'm simply giving you a reasonable rational standard that the jury could have followed the jury may have followed some other standard i don't know but i'm giving you a reasonable rational one that i suggested to well what about one of the survey responses was a local man a company that is locally invested doing things for the community well your honor that actually was an issue at trial i think u.s bakery had mentioned that in one of its briefs and and my rebuttal to that it was in my reply brief and i'll tell you what it said um every witness from u.s bakery disagreed with that concept that local means a local company i asked every person who came to the stand for united states bakery and this is cited in our briefs and i said when you said local you're referring to products aren't you every single witness said yes so local does not mean that this is a local company and that is such a weak description that even the witnesses from usb didn't agree with it uh i also want to hit briefly on the light i have a question about local my question is what difference it made the your expert on damages said that u.s bakery should relinquish all its profits for every loaf of bread sold with the local label and i don't see how that's justified by the record let's let's think of this meeting between the marketing people and u.s bakery and they say i think you should put local on your bread did they say otherwise you won't be able to sell any because that's essentially how the expert calculated damages as if u.s bakery couldn't have made any profit wouldn't have sold any bread if it didn't have local on it or did the marketing guy said i think we can increase sales five percent from your survey evidence we don't really know anything from that survey evidence that i can see at least not without speculating how you're going to measure how much additional profit u.s bakery got by putting local on that bread your honor i think all my expert witness did is to calculate the amount of u.s bakery's profits on the product that were sold through false advertising the law is what entitles me to those profits i don't have to prove causation in order to recover those profits and i don't know if that's brief because that wasn't an issue in the briefing but i know enough of intellectual property law to know that i don't have to prove causation to get those profits as long as i proved that they engaged in false advertising with the jury found to be willful false advertising i am entitled to the profits that they got from that i don't have to prove it's not a lost profit claim i could have pursued a lost profit claim if i did then what your honor is talking about would be absolutely true i would have to prove some level of causation but in order to recover their profits i don't have to i don't have to have causation okay i i i came to thinking about that issue based on the challenges to the to the survey and the appropriateness of the survey and it seemed like that was missing from the survey but you're saying that's irrelevant to getting lost profits yes to getting lost profits for false advertising especially willful false advertising which the jury found here i don't have to prove but for proximate cause i would only have to prove that if i were pursuing my clients lost profits okay then it's profits i don't have to do it that's why i saw frankly that's one of the reasons to seek those your honor my phone is going off i yes but you said you had one other thing you wanted to i'll give mr felix chance to respond but your honor i just wanted to make clear that even if i did not for any reason prove literal falsehood that likelihood of confusion is sufficient and i proved likelihood of confusion i didn't need a survey for a variety of reasons but even if i did i had a survey and disputes as to methodology as to the universe of respondents that goes to the weight of the survey it is uniformly held you can't hold it inadmissible and that's in effect what the court did in the remit order they said that survey is not admissible to prove confusion because you didn't use the right universe of consumers to respond and the jury heard that evidence the jury apparently didn't believe it assuming that they relied upon survey evidence but i didn't have to have a survey i've proved confusion likelihood of confusion many other ways but i had a great survey and that's enough as well that was the other point i want to make okay thank you um mr felix i don't know how much time you had left isn't mr wilker did i say mr felix again that's because my screen has all these names of people who aren't participating and that's below your picture but i see now mr wilker i i apologize mr wilker how melissa was it 56 seconds he had left um make it two minutes please because uh mr burke i let go over a minute can you change that to two minutes okay thank you okay mr wilker thank you your honor and briefly i'm not going to go into detail but mr burke overstates the record as he did a trial he does it again with this court i would urge you to simply review the record as cited in the briefs because it doesn't support what he says it supports factually and legally um it's not up to the jury to decide the definition it's the there has to be a definition of local against which the jury can measure it and there was no as the court has already pointed out there are multiple definitions page 32 of our principal opening brief talks about the specific definitions that their survey respondents offered the court properly noted that if you're across the state line but nearby you're not local under their definition that's not in terms of the survey the survey was of utah respondents and utah demographics are different than washington and oregon and there's and the of the likelihood of consumer confusion in any state outside of utah and their expert didn't extrapolate he said he could he never explained how but he never did extrapolate he said it was an empirical question and it was not one that he had in that he had examined there is simply no evidence outside of the border of utah as to whether there was a likelihood of confusion here and that is fatal to their damages claim it doesn't matter what mr hoffman describes as the overall sales and those sales that might have crossed state lines or not um if there's no evidence of harm in those other states and there was zero evidence here zero uh and mr burke's burden as the plaintiffs lawyer was to establish that i would ask you on the trade secret i just want to say quickly it's not that they're well within the middle of the range they're at the bottom of the range we're at the top of the range and dr hosdy described the secret in a manner that captured what we do but also captured what they do that's not a trade secret that's describing two different things what he described is not what they do i would urge you to compare what they in fact did to what he described and to what my client already did and already does those things are not unique these were this was a and potato flower is a publicly disclosed degree your time has expired unless uh when the other judges has a question i'm good okay good thank you your honor okay uh mr egan you have nothing to rebut nothing was said in response on mr sycamore well i think there is if i may i think there is your honor if i may go ahead one argument or statement that mr burke made um was that that usb had hired leland sycamore to make the uh reintroduce grandma sycamore's bread there's no evidence of that at all it's not in the record and there's no evidence that he was hired to fix the reintroduced bread and the whole focus on the reintroduced bread goes back to the arguments that i was making about uh 2013 versus 2008 and i would just end by saying uh that the lujan case and the colorado versus sunoco case give the court the authority to determine on the evidence that there was a race judicata issue and as well as a statute limitations issue and i appreciate the court's indulgence thank you counsel cases submitted counsel are excused